**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | **MDL NO. 2873**<br><br>**MDL No: 2:18-mn-2873-RMG** |
| GERALD A. ROSS, | ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | **JUDGE RICHARD GERGEL** |
| v. | ) ) | **Civil Action No:** _____ |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); | ) ) | |
| AGC CHEMICALS AMERICAS INC.; | ) | **COMPLAINT AND** |
| ARKEMA, INC.; | ) | **JURY DEMAND** |
| BASF CORPORATION, Individually and as Successor-in-Interest to Ciba, Inc.; | ) ) | |
| BUCKEYE FIRE EQUIPMENT COMPANY; | ) ) | |
| CARRIER GLOBAL CORPORATION; | ) | |
| CHEMDESIGN PRODUCTS, INC.; | ) | |
| CHEMGUARD, INC.; | ) | |
| CHUBB FIRE, LTD.; | ) | |
| CLARIANT CORP., Individually and as Successor-in-Interest to Sandoz Chemical Corporation; | ) ) ) | |
| CORTEVA, INC.; | ) | |
| DUPONT DE NEMOURS INC., f/k/a DowDuPont, Inc.; | ) ) | |
| DYNAX CORPORATION; | ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY, Individually and as Successor-in-Interest to DuPont Chemical Solutions Enterprise; | ) ) ) ) | |
| NATION FORD CHEMICAL COMPANY; | ) | |
| NATIONAL FOAM, INC.; | ) | |
| THE CHEMOURS COMPANY; | ) | |
| THE CHEMOURS COMPANY FC, LLC; | ) ) | |
| TYCO FIRE PRODUCTS LP; | ) | |
| UNITED TECHNOLOGIES CORPORATION; | ) ) | |

UTC FIRE & SECURITY AMERICAS    )
CORPORATION, INC.    )
    )
    Defendants.    )

## COMPLAINT

COMES NOW Plaintiff, Gerald A. Ross (hereinafter "Plaintiff"), by and through his undersigned counsel, OnderLaw, LLC, and for his Complaint against Defendants, 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company, AGC CHEMICALS AMERICAS INC., ARKEMA, INC., BASF CORPORATION, Individually and as Successor-in-Interest to Ciba, Inc., BUCKEYE FIRE EQUIPMENT COMPANY, CARRIER GLOBAL CORPORATION, CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC., CHUBB FIRE, LTD., CLARIANT CORPORATION, Individually and as Successor-in-Interest to Sandoz Chemical Corporation, CORTEVA, INC., DUPONT DE NEMOURS INC., f/k/a DowDuPont, Inc., DYNAX CORPORATION, E.I. DUPONT DE NEMOURS AND COMPANY, Individually and as Successor-in-Interest to DuPont Chemical Solutions Enterprise, NATION FORD CHEMICAL COMPANY, NATIONAL FOAM, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, TYCO FIRE PRODUCTS LP, UNITED TECHNOLOGIES CORPORATION, and UTC FIRE & SECURITY AMERICAS CORPORATION, INC., alleges, on knowledge as to his own actions, and otherwise upon information and belief, states as follows:

## INTRODUCTION

1.    Plaintiff brings this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid

("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.     AFFF is a specialized substance designed to extinguish petroleum-based fires.  It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF products with knowledge that it contained highly toxic and bio persistent PFAS which would expose end users of the product to the risks associated with PFAS.  Further, Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF products which contained PFAS for use in firefighting.

4.     PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time.  Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

5.     PFAS are highly toxic and carcinogenic chemicals.  Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

6.     Defendants' PFAS-containing AFFF products were used in their intended manner and for the purposes for which they were intended, without significant change in their condition when they left Defendants' control.  Plaintiff was unaware of the dangerous properties of the Defendants' PFAS-containing AFFF products and relied on the Defendants' warnings and instructions as to the proper handling of the products. Plaintiff's consumption, inhalation, and/or dermal absorption of PFAS from Defendants' AFFF

products caused him to develop the serious medical conditions and complications alleged herein.

7.    Through this action, Plaintiff seeks to recover compensatory, punitive, and other damages  arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF products at various locations during his service in the United States Navy. Plaintiff further seeks any appropriate injunctive, equitable, and declaratory relief arising from the same.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.    Venue is proper in this District Court pursuant to this Court's Case Management Order No. 3 ("CMO #3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO #3, Plaintiff designates the United States District Court for the Western District of Texas as the "home venue" where Plaintiff would have otherwise filed suit pursuant to 28 U.S.C. § 1391.  But for CMO #3, venue is proper in the United States District Court for the Western District of Texas because it is the judicial district in which Plaintiff is a resident and/or citizen, a substantial part of the events or omissions giving rise to the claim occurred in that district, and the Defendants conduct business within that district.  Plaintiff respectfully requests that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the Western District of Texas.

10.    The United States District Court for the Western District of Texas has

personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the State of Texas. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Western District of Texas does not offend traditional notions of fair play and substantial justice.

## **PARTIES**

11. Plaintiff, Gerald A. Ross, is a resident and citizen of San Antonio, Texas.

12. Plaintiff was exposed to Defendants' AFFF products while serving in the United States Navy from approximately 1981 to 1985 while serving at various facilities including Naval Training Center Orlando, Florida, Naval Air Station Oceana, Virginia, Pier 12 of Norfolk, Virginia, and aboard the USS Nimitz (CVN 68).

13. As a result of his exposure to Defendants' PFAS-containing AFFF products, Plaintiff was diagnosed with thyroid disease, which has caused him to suffer severe personal injuries, pain, suffering, and emotional distress.

14. The injuries, pain, suffering, and emotional distress were directly and proximately caused by Defendants' AFFF products.

15. At all times relevant to this litigation, upon information and belief, each of the Defendants designed, developed, manufactured, marketed, and/or sold AFFF products used by firefighters and members of the military throughout the country, including those states and locations where Plaintiff was exposed.

16. Each of the Defendants designed, developed, manufactured, marketed,

and/or sold the PFAS-containing AFFF products to which Plaintiff was exposed, and directly and proximately caused Plaintiff to develop thyroid disease and suffer severe personal injuries, pain, suffering, and emotional distress.

17.    Defendant **3M Company (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M")** is a Delaware corporation and conducts business throughout the United States, including those states and locations where Plaintiff was exposed, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.

18.    Upon information and belief, 3M Company manufactured, distributed, and sold PFAS-containing AFFF products from the 1960s until at least 2002.

19.    At all times relevant, 3M Company designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

20.    Defendant **AGC Chemicals Americas Inc**. (**"AGC Americas"**) is a corporation organized and existing under the laws of Delaware, having a principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

21.    AGC Americas conducts business throughout the United States, including those states and locations where Plaintiff was exposed, manufacturing glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse

films, silica additives, and various fluorointermediates, including those used in AFFF products.

22.     At all times relevant, ACG Americas designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

23.     Defendant **Arkema Inc. ("Arkema")** is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA 19406.  Upon information and belief, the assets of Arkema's fluorochemical business were purchased by Defendant DuPont in 2002.  Arkema conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

24.     At all times relevant, Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained

PFAS for use in firefighting.

25.    Defendant **BASF Corporation ("BASF")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.  BASF conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

26.    On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America.

27.    On information and belief, BASF is the Successor-in-Interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty chemicals company, that manufactured fluorosurfactants containing PFOA used in AFFF.

28.    At all times relevant, BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

29.    Defendant **Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.  Buckeye conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

30.    At all times relevant, Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

31.    Defendant **Carrier Global Corporation ("Carrier")** is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.  Carrier conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

32.    Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF products.

33.    At all times relevant, Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.    Defendant **ChemDesign Products, Inc. ("ChemDesign")** is a corporation

organized and existing under the laws of Texas and having a principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. ChemDesign conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

35.    At all times relevant, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

36.    **Chemguard, Inc. ("Chemguard")** is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Chemguard conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

37.    Upon information and belief, Chemguard is a subsidiary of Johnson Controls International PLC.

38.    At all times relevant, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise

handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

39.    Defendant **Chubb Fire, Ltd. ("Chubb")** is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including, but not limited to, Chubb Fire & Security, Ltd., Chubb Security PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

40.    Chubb conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

41.    At all times relevant, Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

42.    Defendant **Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, having a principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

43.    On information and belief, Clariant is Successor-in-Interest to Sandoz

Chemicals Corporation, and manufactured fluorointermediates used in AFFF products.

44.     At all times relevant, Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

45.     Defendant **E.I. DuPont de Nemours & Company ("DuPont")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Road, Wilmington, Delaware 19805.  DuPont conducts business throughout the United States, including those states and locations where Plaintiff was exposed .

46.     DuPont is a Successor-in-Interest to **DuPont Chemical Solutions Enterprise ("DuPont Chemical")**, a Delaware corporation with a principal place of business located at 1007 Market Street, Wilmington, Delaware 19898.

47.     DuPont Chemical was a member of the Telomer Research Program ("TRP"). As a member it was required to provide a list and volume of products it was selling in the United States on a yearly basis.

48.     In a letter addressed to the Office of Pollution Prevention and Toxics (OPPT) Document Control Office, dated May 14, 2003 and signed by Stephen H. Korzeniowski, DuPont provided its Telomer-based sales products in the United States for

the year 2002.

49. The letter, which was redacted and sent to the United States Environmental Protection Agency under its PFOA Stewardship Program, included AFFF sales volume, on an active ingredient pound basis, as well as its Chemical Abstracts Service (CAS) number and chemical name, and is included in the PFOA Stewardship Program Docket.

50. Defendant **The Chemours Company ("Chemours")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1007 Market Street, Wilmington, Delaware 19889. Chemours conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

51. In 2015, DuPont spun off its "performance chemicals" business to Chemours along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

52. Defendant **The Chemours Company FC LLC ("Chemours FC")**, a Successor-in-Interest to DuPont Chemical, is a corporation organized and existing under the laws of Delaware, having a principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

53. Defendant **Corteva, Inc. ("Corteva")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre

Road, Wilmington, Delaware 19805.  Corteva conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

54.    Defendant **DuPont de Nemours Inc. f/k/a DowDuPont, Inc.** ("**DuPont de Nemours Inc.**") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 974 Centre Road, Wilmington, Delaware 19805.  DuPont de Nemours Inc. conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

55.    On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off Corteva.

56.    Prior to the separation, DowDuPont owned Corteva as a wholly-owned subsidiary formed in February 2018.

57.    On June 1, 2019, DowDuPont distributed a pro rata dividend of both issued and outstanding shares of Corteva common stock to DowDuPont shareholders.

58.    Corteva holds certain DowDuPont assets and liabilities including DowDuPont's agriculture and nutritional businesses.

59.    On June 1, 2019 DowDuPont, the surviving entity after the spin-off of Corteva and another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the spin-offs, as well as the balance of the financial assets and liabilities of E.I. DuPont not assumed by Corteva.

60.    Defendants E.I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

14

61. At all times relevant, DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

62. Defendant **Dynax Corporation ("Dynax")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 79 Westchester Avenue, Pound Ridge, New York 10576, and an address for service of process at 103 Fairview Park Drive, Elmsford, New York 10523-1544. Dynax conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

63. On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers used in firefighting foam agents.

64. At all times relevant, Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

65.    **Kidde-Fenwal, Inc. ("Kidde-Fenwal")** is a corporation organized under the laws of Delaware, having a principal place of business at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the Successor-in-Interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam Systems, Inc.) (collectively, "Kidde/Kidde Fire") and manufactured and sold AFFF.  Kidde-Fenwal conducts business throughout the United States, including those states and locations where Plaintiff was exposed. Kidde-Fenwal filed for relief under Chapter 11 of the United States Bankruptcy Code on May 14, 2023 and would be a named defendant in this action but for that Filing.

66.    At all times relevant, Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

67.    Defendant **Nation Ford Chemical Company ("Nation Ford")** is a South Carolina Corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.  Upon information and belief, Nation Ford manufactured fluorochemicals for use in PFAS-containing AFFF products.  Nation Ford conducts business throughout the United States, including those states and locations where Plaintiff exposed.

68.    At all times relevant, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

69.    Defendant **National Foam, Inc. ("National Foam")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 141 Junny Road, Angier, North Carolina 27501.  National Foam conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

70.    Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd. and is the Successor-in-Interest to Angus Fire Armour Corporation and manufactures the Angus brands of products.

71.    At all times relevant, National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained

PFAS for use in firefighting.

72.    **Tyco Fire Products LP ("Tyco")** is a limited partnership organized under the laws of Pennsylvania, with its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.  Tyco conducts business throughout the United States, including, including those states and locations where Plaintiff was exposed.

73.    Upon information and belief, Tyco is the Successor-in-Interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990.

74.    Beginning in or around 1975, Ansul manufactured, distributed, and/or sold AFFF that contained PFAS.  After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and/or sell AFFF that contained PFAS.

75.    Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

76.    At all times relevant, Tyco designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

77.    Defendant **United Technologies Corporation ("United Technologies")** is a foreign corporation organized and existing under the laws of the State of Delaware and

conducts business throughout the United States, including those states and locations where Plaintiff was exposed.  United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, CT 06032.

78.    At all times relevant, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

79.    **UTC Fire & Security Americas Corporation, Inc. ("UTC")** is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. Upon information and belief, UTC was a division of United Technologies Corporation. UTC does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold AFFF.

80.    At all times relevant, UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

81.    3M, ACG Americas, Arkema, BASF, Buckeye, Carrier, ChemDesign, Chemguard, Chubb, DuPont (all entities collectively identified as "DuPont" *supra*), Dynax, Nation Ford, National Foam, Tyco, United Technologies, and UTC are collectively referred to as "Defendants."

82.    Plaintiff alleges that each named Defendant is in some manner responsible for the acts alleged herein and that they directly and proximately caused Plaintiff's injuries, as alleged herein.

83.    Plaintiff alleges that each named Defendant derived substantial revenue from the PFAS, PFAS materials, and products containing PFAS in AFFF products that Defendants designed, manufactured, tested, packaged, promoted, marketed, advertised, distributed, labeled, and/or sold within those states and locations where Plaintiff lived and/or served, and were used by Plaintiff.

84.    Defendants expected or should have expected their acts to have consequences within those states and locations, and derived substantial revenue from interstate commerce.

85.    Defendants purposefully availed themselves of the privilege of conducting activities within those states and locations where Plaintiff was exposed, thus invoking the benefits and protections of its laws.

86.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed

to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment, or agency.

87.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

**FACTUAL ALLEGATIONS**

**THE FLUOROCHEMICALS: PFOA AND PFOS**

88.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

89.    Fluorochemical products are highly water soluble, which facilitates the ease at which they spread throughout the environment, contaminating soil, groundwater, and surface water. This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

90.    Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

91.    Fluorochemical products are persistent in the human body. A short-term

exposure can result in a body burden that persists for years and can increase with additional exposures.

92.     Since they were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

93.     According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects, and other effects (e.g., cholesterol changes).

94.     The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

95.     The EPA has noted that drinking water can be an additional source of PFCs in communities where these chemicals have contaminated water supplies.  "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield at which fluorochemical products were used for firefighting."

96.     The EPA initially issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water.  However, in June 2022, the EPA issued interim updated health advisory levels for PFOA at .004 ppt, and PFOS at .02 ppt.

**AQUEOUS FILM-FORMING FOAM**

97.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

98.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

99.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

100.    All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

101.    AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

102.    When used as the Defendants intended and directed, Defendants' AFFF products release PFOA, PFOS, and/or their precursor chemicals into the environment.

103.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

104.    Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Plaintiff.

## DEFENDANTS' KNOWLEDGE

105.    On information and belief, by the 1960s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and

PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

106.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

107.    In 1980, 3M published data in peer-reviewed literature showing that humans retained PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

108.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

109.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects - one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

110.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion

capabilities of the body."

111.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; however, 3M's PFOS-based AFFF production did not fully phase out until 2002.

112.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

113.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and/or sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in AFFF products.

114.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

115.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e) - the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

116.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of

the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions - high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

117.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

118.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold fluorochemical products; (2) failed to issue reasonable warnings and/or instructions on how fluorochemical products should be used and disposed of in AFFF products; (3) failed to recall and/or warn the users of fluorochemical products, which contained or degraded into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew the foreseeable identities of the purchasers and end-users of the fluorochemical products, as well as its final fate in water, biota, and humans.

## GERALD A. ROSS' EXPOSURE TO PFAS-CONTAINING AFFF PRODUCTS

119.    Upon information and belief, the United States Navy where Plaintiff was exposed stored and used Defendant's AFFF products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises

while Plaintiff served in the United States Navy from approximately 1981 to 1985.

120.    Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals to fire departments and the military.

121.    The descriptive labels and material safety data sheets for Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals utilized by firefighters within the relevant states and locations did not reasonably or adequately describe AFFF's risks to human health.

122.    The Defendants knew or should have known of the hazards of AFFF products containing PFOA and/or PFOS and/or their precursor chemicals when the products were manufactured.

123.    From approximately 1981 to 1985, Plaintiff was exposed while serving at various facilities including Naval Training Center Orlando, Florida, Naval Air Station Oceana, Virginia, Pier 12 of Norfolk, Virginia, and aboard the USS Nimitz (CVN 68).

124.    Throughout the time of his service, Plaintiff used and was exposed to Defendants' AFFF products.

125.    During Plaintiff's exposure to Defendants' AFFF products and through PFAS-containing contaminated water, the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body.

126.    At no point during his service did Plaintiff receive any warning that Defendants' PFAS-containing AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

127.    In approximately 2022, Plaintiff's physicians diagnosed Plaintiff with thyroid disease.

128.    Sometime after his diagnosis, Plaintiff first discovered that his thyroid disease was caused by exposure to Defendants' AFFF products.

129.    Plaintiff's thyroid disease was directly and proximately caused by exposure to Defendants' AFFF products.

130.    Plaintiff suffered, and continues to suffer, the effects of his disease which was directly and proximately caused by his exposure to Defendants' AFFF products.

## COUNT I – NEGLIGENCE

131.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

132.    Defendants owed a duty to individuals, including Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to their AFFF products.

133.    Defendants breached their duty of care and were negligent, grossly negligent, reckless, and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of their AFFF products or underlying PFAS containing chemicals used in AFFF production in one or more of the following respects:

   a.  Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

   b.  Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

c. Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

d. Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

e. Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

f. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and/or

g. In selling and/or distributing a product which was inherently dangerous to the public.

134. As a direct and proximate cause of Defendants' negligence and breach of duty, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including, but not limited to, medical expenses, lost income, pain and suffering, and/or other damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

135. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

136. At all relevant times, Defendants possessed knowledge that the PFAS-containing AFFF products which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used,

and/or distributed were bio-persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in his blood, and the biopersistence and bioaccumulation of such PFAS in his blood.

137.   However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in his blood and/or body, and such PFAS persisting and accumulating in his blood and/or body.

138.   Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in Plaintiff's blood and/or body.

139.   Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's person and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

140.   At all relevant times, the PFAS present in Plaintiff's blood originated from Defendants' acts and/or omissions.

141.   Defendants continued to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that resulted in persisting and accumulating levels of PFAS in Plaintiff's blood.

142.   Plaintiff, and any reasonable person, would find the contact at issue harmful and/or offensive.

143. Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto, and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

144. Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

145. The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

146. The presence of PFAS in the blood and/or body of Plaintiff altered the structure and/or function of such blood and/or body parts and resulted in cancer.

147. As a direct and proximate result of Defendants' foregoing acts and omissions, Plaintiff suffered physical injury for which Defendants are therefore liable.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

148. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

149. At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, distribution, preparation, and/or labeling of PFAS-containing AFFF products.

150. At all times relevant to this Complaint, Defendants regularly participated in

placing the AFFF products into the stream of commerce throughout the United States, including those states and locations where Plaintiff was exposed.

151.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF products, Defendants owed a duty to use reasonable care to all persons whom Defendants' products might foreseeably cause harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

152.    All Defendants exercised substantial control over the design, testing, manufacture, packaging, and/or labeling of their AFFF products that proximately and directly caused Plaintiff's injuries.

153.    Plaintiff, as a member of the military, was an ordinary user and individual whom Defendants reasonably should have foreseen would use their PFAS-containing AFFF products.

154.    Other military servicemen used Defendants' AFFF products in a reasonably foreseeable manner.

155.    Other military servicemen used Defendants' AFFF products in the manner and for the purposes for which they were intended.

156.    Plaintiff used Defendants' defective and unreasonably dangerous AFFF products without substantial changes in the condition in which the products were originally sold and left Defendants' control.

157.    Plaintiff was not a sophisticated user of Defendants' AFFF products.

158.    Defendants' PFAS-containing AFFF products did not perform safely as an ordinary consumer would have reasonably expected the products to perform when used in an

intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.

159.    Defendants' defective design of the AFFF products was far more dangerous than Plaintiff or an ordinary consumer would expect when exposed, as Plaintiff did, in an intended and reasonably foreseeable manner.

160.    The unreasonably dangerous and defective design of Defendants' AFFF products was a substantial factor and the direct and proximate cause of Plaintiff's injuries.

161.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF products that did not contain harmful PFAS.

162.    The PFAS contained within Defendants' AFFF products was not an inherent characteristic of the product that could not be eliminated without substantially compromising the AFFF products' usefulness and/or desirability.

163.    Alternative designs and/or formulations were available, practical, reasonable, and technologically feasible during the relevant time Plaintiff was exposed to their PFAS-containing AFFF products.

164.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to Plaintiff's health that was caused by Defendants' manufacture, marketing, and/or sale of their AFFF products.

165.    The risks of AFFF products were not obvious to users of AFFF, including Plaintiff, nor were they obvious to users in the vicinity of AFFF use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals.

166.    Plaintiff, as an ordinary consumer, could not have reasonably discovered the defects, risks, and dangers associated with the use of AFFF products and could not

protect himself from exposure to Defendants' AFFF products.

167.    The unreasonably dangerous or hazardous properties of Defendants' AFFF products were not apparent to Plaintiff, who was an ordinary user of the AFFF products who had ordinary knowledge common to the community.

168.    Plaintiff, as an ordinary user of Defendants' AFFF products, was unaware that using Defendants' AFFF products created an unreasonable risk of personal injury to him.

169.    The benefits of Defendants' defective and unreasonably dangerous AFFF products did not outweigh the unreasonably dangerous design's inherent risk of danger.

170.    Defendants knew or should have known about the inherent risk of harm based on the scientific, technical, and/or medical information reasonably available at the time their AFFF products left their control.

171.    At the time of manufacture, sale, and/or distribution, Defendants had actual knowledge their AFFF products were defective and unreasonably dangerous and there was a substantial likelihood the defect would cause Plaintiff's injuries, and Defendants willfully disregarded that knowledge in the manufacture, sale, and/or distribution of their AFFF products.

172.    As a direct and proximate result of Defendants' defective design, Plaintiff sustained injuries and has suffered and will continue to suffer some or all of the following damages:

     a.  Past, present, and future medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

     b.  Physical injury, both temporary and permanent;

     c.  Economic damages;

d.  Non-economic damages, including severe and significant emotional distress, mental pain, and suffering;

e.  Humiliation, embarrassment, and fear;

f.  Loss of enjoyment of life;

g.  Annoyance and inconvenience; and

h.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

173.  As a result of Defendants' design and formulation of an unreasonably dangerous and defective product, Defendants are strictly liable in damages to Plaintiff.

174.  Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, the Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV - STRICT PRODUCTS LIABILITY – FAILURE TO WARN

175.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

176.  Defendants knew, or in the exercise of ordinary care, should have known that exposure to AFFF products presented a substantial danger when used by ordinary users such as Plaintiff because it is hazardous to human health and the environment.

177.  Defendants knew, or in the exercise of ordinary care, should have known

that the manner in which they were manufacturing, marketing, and/or selling AFFF products would result in physical harm to Plaintiff.

178.    Ordinary consumers of Defendants' AFFF products, or those who had ordinary knowledge common to the community, would not have recognized the risks.

179.    Plaintiff, as a member of the military, was an ordinary and foreseeable user of Defendants' AFFF products.

180.    Defendants' defective and unreasonably dangerous AFFF products were in substantially the same condition when they left Defendants' control when they were used by Plaintiff and/or when Plaintiff was exposed to Defendants' AFFF products.

181.    Plaintiff used Defendants' AFFF products in a reasonably foreseeable manner.

182.    Plaintiff used Defendants' AFFF products in the manner and for the purposes for which they were intended.

183.    All Defendants exercised substantial control over the design, testing, manufacture, packaging, and/or labeling of their AFFF products that proximately and directly caused Plaintiff's injuries.

184.    Defendants failed to adequately warn and instruct Plaintiff of the potential risks of AFFF products, despite having superior knowledge of their AFFF products' defective and dangerous condition.

185.    Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

186.    Had Defendants provided adequate warnings and instructions, Plaintiff could have taken measures to avoid or lessen the exposure.

187.    The lack of sufficient warnings and instructions was a substantial factor in causing Plaintiff's injuries.

188.    Defendants' failure to adequately warn and instruct Plaintiff of their unreasonably dangerous and defective AFFF products was a direct and proximate cause of Plaintiff's injuries.

189.    Defendants' failure to provide adequate and sufficient warnings and instructions for the AFFF products that they manufactured, marketed, and/or sold rendered the AFFF products defective and unreasonably dangerous.

190.    The material dangers and risks posed by Defendants' AFFF products were not apparent, obvious, generally appreciated, or already recognized by Plaintiff, as one with knowledge common to the community.

191.    At the time of manufacture, sale, and/or distribution, Defendants had actual knowledge their AFFF products were defective and unreasonably dangerous and there was a substantial likelihood the defect would cause Plaintiff's injuries, and Defendants willfully disregarded that knowledge in the manufacture, sale, and/or distribution of their AFFF products.

192.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered and will continue to suffer some or all of the following damages:

    a.    Past, present, and future medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

    b.    Physical injury, both temporary and permanent;

    c.    Economic damages;

    d.    Non-economic damages including severe and significant emotional distress, mental pain, and suffering;

e.    Humiliation, embarrassment, and fear;

f.    Loss of enjoyment of life;

g.    Annoyance and inconvenience; and

h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

193.    As a result of Defendants' manufacture, sale, distribution, and failure to warn and properly instruct Plaintiff of their defective AFFF products, Defendants are liable in damages to Plaintiff.

194.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V - FRAUDULENT CONCEALMENT

195.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as if restated in full herein.

196.    Defendants knowingly, intentionally, maliciously, willfully, wantonly, recklessly, and/or negligently failed and/or refused to advise Plaintiff of the dangers and/or health risks posed by Defendants' PFAS-containing AFFF products.

197.    Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendants' AFFF products from Plaintiff, who had a right to know

of information which would have prevented him from being exposed and/or continuing to be exposed to the AFFF products.

198.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' AFFF products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to AFFF products and physical injuries in humans and animals.

199.    In connection with the AFFF products, Defendants have had, and continue to have, a general duty of care to disclose to Plaintiff the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Plaintiff that Defendants had, and were continuingly, exposing Plaintiff to harmful levels AFFF products.

200.    In addition to its general duty of care, Defendants also voluntarily assumed a duty to disclose to Plaintiff the actual and potential harm to his body as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Plaintiff that Defendants had exposed, and were continuingly exposing Plaintiff to harmful AFFF products, which duty was voluntarily assumed by affirmatively representing to Plaintiff that his AFFF exposure was harmless, when Defendants knew and/or reasonably should have known that the Defendants' AFFF products caused, and were continuing to cause, bodily injury.

201.    Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and

Plaintiff.

202.    Despite Defendants' knowledge regarding fluorochemical exposure, and despite Defendants' duties to disclose to Plaintiff, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff regarding his exposure to AFFF products.

203.    Defendants withheld, misrepresented, and/or concealed information regarding AFFF exposure from Plaintiff with the intention to mislead and/or defraud him into believing that his AFFF exposure was not harmful, and to mislead and/or defraud him into continuing to be exposed to their AFFF products.

204.    Defendants withheld, misrepresented, and/or concealed information regarding AFFF exposure that was a substantial factor in causing Plaintiff's harm.

205.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff was exposed to Defendants' AFFF products and was injured.

206.    Defendants not only withheld, misrepresented, and/or concealed material information from Plaintiff but also committed fraud against Plaintiff by affirmatively representing to Plaintiff that their AFFF products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' AFFF products had caused, and were continuing to cause, bodily injury and/or risk of such bodily injury to Plaintiff.

207.    Defendants' representations to Plaintiff were knowingly, intentionally,

negligently, and/or recklessly false.

208.    Defendants had, and continue to have, a duty of care to provide Plaintiff, with truthful representations regarding the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding Defendants' AFFF products and the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions.

209.    Defendants' affirmative representations and/or omissions to Plaintiff were false and were material to Plaintiff in forming his belief that Defendants' AFFF products were safe, in causing him to continue to use the AFFF products, and in causing him to not seek treatment and/or ways to remedy his past and continuing exposure to AFFF products.

210.    Defendants made the affirmative representations and/or omissions to Plaintiff with the intention that Plaintiff would be misled into relying on such affirmative representations and/or omissions.

211.    Plaintiff relied on Defendants' affirmative representations and/or omissions in forming his belief that Defendants' AFFF products were safe in causing him to continue to use the AFFF products, and in not seeking treatment and/or ways to remedy his past and continuing exposure to Defendants' AFFF products.

212.    Plaintiff was damaged and physically harmed as a direct and proximate result of his justified reliance on Defendants' affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to use the AFFF products.

213.    Defendants' acts were willful, wanton, reckless and/or conducted with a

reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – BREACH OF EXPRESS AND IMPLIED WARRANTIES

214. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

215. At all times relevant hereto, the Defendants manufactured, marketed, labeled, and/or sold the AFFF products that have been previously alleged and described herein.

216. At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

217. The Defendants warranted that the product was merchantable and fit for the particular purpose for which they were intended and would be reasonably safe.

218. These warranties were breached, and such breach directly and proximately caused Plaintiff's injuries and damages.

219. Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the product.

220. Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use

and was neither of merchantable quality nor safe for their intended use in that the product had a propensity to cause serious injury, pain, and cancer.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## CLAIM FOR PUNITIVE DAMAGES

221.     Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

222.     At all times relevant to the present cause of action, Defendants manufactured, marketed, and/or sold the AFFF products that were used by Plaintiff and that resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

223.     At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants knew or should have known that their AFFF products were toxic chemicals capable of causing harm to human health.

224.     Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to their AFFF products.

225.     The willful, wanton, malicious, and/or reckless conduct of Defendants, includes, but is not limited to: (1) issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including but not limited to PFOA and PFOS; (2) failing to take all reasonable measures to ensure their AFFF products would be used effectively and properly disposed of; and (3) failing to prevent the foreseeable impacts of their AFFF product exposure upon Plaintiff.

226.    As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' AFFF products and will continue to suffer the serious, debilitating, and severe physical, mental, andemotional distress of his cancer caused by Defendants' AFFF products.

227.    Defendants have demonstrated an outrageous conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

228.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others.  The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

229.  Plaintiff, as a reasonable person, had no way of knowing about the risk of serious injury associated with the use of and exposure to Defendants' AFFF products until very recently.

230.  Until very recently, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF products is harmful to human health.

231.  Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF

products, nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF products could cause personal injury.

232.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

233.    All applicable statutes of limitations have also been tolled by Defendants' knowledge and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

234.    Instead of disclosing critical safety information regarding their AFFF products, Defendants have consistently and falsely represented the safety of their AFFF products.

235.    This fraudulent concealment continues through the present day.

236.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Estoppel

237.    Defendants were under a continuous duty to consumers, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to their AFFF products.

238.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF products and the serious risks associated with the use of and exposure to their AFFF products.

239.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands for judgment be entered against all Defendants,

jointly and severally, and request the following relief from the Court:

A. Compensatory damages, including but not limited to cost of past, present, and future medical bills associated with the diagnosis and treatment related to Plaintiff's PFAS-containing AFFF exposure; any potential loss of earnings or wages; and past, present, and future pain and suffering incurred by Plaintiff;

B. Punitive damages in an amount to sufficiently deter Defendants' similar wrongful conduct in the future;

C. Reasonable fees for attorneys and expert witnesses;

D. Costs and disbursements of this lawsuit;

E. Interest on the damages according to law; and

F. Any other and further relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all Counts and issues within this Complaint.

Dated: June 17, 2024                     Respectfully Submitted,

**ONDERLAW, LLC**

*/s/ Patrick D. McMurtray*
James G. Onder – MO #38049
onder@onderlaw.com
Patrick D. McMurtray – TN #31597
pmcmurtray@onderlaw.com
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
(314) 963-9000 Telephone
(314) 963-1700 Facsimile

*Attorneys for Plaintiff*